UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ALVA W.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Case No. 3:22-cv-01517-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Alva W. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

    Plaintiff protectively filed for DIB on March 15, 2019, alleging disability beginning on January 11, 2019. Tr. 157. Plaintiff's application was initially denied on March 12, 2019, and again upon reconsideration on April 1, 2020. Tr. 65, 82. Plaintiff requested a hearing before an

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

Administrative Law Judge ("ALJ"), which took place on April 30, 2021. Tr. 32-52. At the hearing, plaintiff, who was represented by counsel, and a vocational expert testified. *Id*. Plaintiff also amended her alleged onset date to October 1, 2017. Tr. 38. The ALJ issued a decision on September 1, 2021, finding plaintiff not disabled within the meaning of the Act. Tr. 14-26. On August 5, 2022, the Appeals Council denied plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner and subject to review by this court. Tr. 1-4; 42 U.S.C. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

2 – OPINION AND ORDER

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of October 1, 2017, through her date last insured of December 31, 2018. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: right knee disorder, right hip disorder, spine disorder, bilateral carpal tunnel syndrome, trigger finger of the right hand, and right below disorder. *Id*.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff has the ability to

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; frequently climb ramps/stairs and balance; occasionally reach overhead bilaterally; and frequently reach in all other directions with the right dominant extremity and frequently handling, fingering, and feeling with the right dominant hand.

Tr. 19.

At step four, the ALJ found plaintiff was able to perform her past relevant work as a reservation clerk, and that it did not require the performance of work-related activities precluded by her RFC. Tr. 24. Considering plaintiff's age, education, work experience, and RFC, the ALJ also concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including parking lot attendant, toll bridge attendant, and storage facility rental clerk. Tr. 25. Thus, the ALJ concluded plaintiff was not disabled. Tr. 26.

3 – OPINION AND ORDER

## DISCUSSION

### I.  Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an

individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff alleges that the ALJ improperly discounted her subjective symptom testimony regarding her upper extremities. Pl.'s Br. 3-16, ECF #10. Plaintiff testified that because of carpal tunnel in her dominant right hand, she has trouble moving her index, middle, and thumb. Tr. 41. She also testified that in 2016, she injured the middle and ring finger of her right hand such that her ring finger is swollen every day, making her unable to bend it, type, or hold any instrument. *Id*. She went on to state that when she injured her hand in 2016, it also injured her elbow, resulting in consistent pain from her elbow, making it hard to move her wrist. *Id*. Plaintiff went on to testify that she only goes shopping if her arm "doesn't hurt too much," and that if her hand is sore in the morning, she will use paper cups and plates because she would otherwise drop things due to the pain in her hand. Tr. 42. When asked about household chores, plaintiff testified she waits until she feels better since she lives alone. Tr. 43. When questioned by her attorney, plaintiff testified that she is unable to shop or do chores three or four days a week because she cannot bend her fingers or grasp things, when shopping she cannot lift more than fifteen pounds, and she carries her bags on her shoulder because she cannot hold them in her hands. Tr. 44-45. She also testified that her right arm is swollen 24 hours a day, she feels the pain from her elbow down to her fingers, and she cannot do any writing because she has a hard time holding a pen. Tr. 45-46.

5 – OPINION AND ORDER

A.   **Objective Medical Evidence**

The ALJ rejected plaintiff's subjective symptom testimony because it was inconsistent with the objective medical evidence. Tr. 19-23. In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

An independent review of the record shows that plaintiff's complaints are inconsistent with her medical records. For instance, at the hearing, plaintiff complained that a combination of carpal tunnel and pain in her right arm and hand made it difficult for her to grip things, as well as to type or write. Tr. 41. However, in April 2017, her records show that while she complained of new numbness and tingling in her hands, she was diagnosed with "median neuropathy, unspecified laterality," she had no red flag symptoms, she was limited to exacerbating positions and pressure, she was prescribed nighttime wrist splints, and a possible trial of gabapentin was discussed if there was no improvement. Tr. 318. Plaintiff never received the trial of gabapentin and, in September 2017, decided to "step away from medical" due to feeling as though she was constantly being dismissed. Tr. 309. Plaintiff did not seek more treatment for her carpal tunnel

until October 2018, where test results showed normal test results with full strength and range of motion. Tr. 746. However, her hand surgeon did believe that carpal tunnel release surgery was reasonable due to reported numbness. *Id*. At her most recent appointment in January 2019, plaintiff had mild 2/6 right carpal tunnel syndrome, very mild 1/6 left carpal tunnel syndrome, and no ulnar nerve compression in her right arm. Tr. 472. Plaintiff also received a full, comprehensive examination of her hands, where no profound deficits were found. *Id*. In fact, while plaintiff did have very mild triggering of her right ring finger, her hands were entirely normal and without pain such that her medical provider was unable to give her any kind of surgical recommendation, with hand therapy being her best option, which plaintiff turned down.[2] *Id*.

With respect to plaintiff's complaints of trigger finger in her right ring finger, her records show that she had a steroid injection in May 2017, but did not seek treatment beyond this injection until a follow up appointment in April 2018. Tr. 316-17, 379. Chart notes from the April 2018 appointment, show plaintiff went to occupational therapy but "left in 90 seconds because OT said they could not help her." Tr. 379. Plaintiff was rereferred to occupational therapy. Tr. 382. After completing occupational therapy, plaintiff was examined by a hand surgeon in October 2018. Tr. 744-46. The surgeon noted no observable triggering, and that plaintiff's right hand had full strength, full range of motion, full flexion and extension, and normal median and ulnar nerve function. Tr. 745-46. The surgeon also noted that "triggering of her ring finger in the context of her essentially normal hand exam does not explain the degree of

---

[2] Notably, the physician assistant who was treating plaintiff asked a doctor to examine plaintiff together "as patient was becoming frustrated and upset at my lack of a diagnosis for her unremarkable exam and results." The doctor "examined the patient fully," and found "anatomically, she has no profound deficits." Tr. 472.

7 – OPINION AND ORDER

disability she claims." *Id*. At a follow up in January 2019, plaintiff received a full anatomical exam of her right and left hand. Tr. 472. Except for some very mild triggering of her right ring finger, her hands were entirely normal and without pain when resistance was introduced. *Id*. Her providers suggested hand therapy as her best option, which plaintiff turned down. *Id*.

The ALJ's rejection of plaintiff's testimony for inconsistencies with the objective medical record is a clear and convincing reason to discount her testimony supported by substantial evidence in the record. The ALJ did not err in rejecting her testimony on this basis.

### B. Activities of Daily Living

The ALJ also found plaintiff's activities of daily living made her testimony regarding her limitations less persuasive. Tr. 22-23. The ALJ noted that plaintiff remarked to her physical therapist that she did not want to return to the hotel industry, she found it difficult going from sitting to standing, and she could not ascend hills and stairs without pain. Tr. 22 (citing Tr. 599). Plaintiff also reportedly went to physical therapy, did squats and exercises at home, walked two to five miles every day in a hilly area, and shopped and did household chores on days when her pain was manageable. Tr. 22-23 (citing Tr. 42-46, 219, 569). Plaintiff further explained that laundry can take her up to four hours, she only cleans once a month, and that it is physically impossible for her to go shopping or do household chores three or four days out of the week. Tr. 44-45, 219

While an ALJ may use activities of daily living to discount a plaintiff's subjective symptom testimony, those activities must create a contradiction in the plaintiff's testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cit. 2007). Here, the ALJ did not explain how plaintiff's activities are transferable to the workplace or how they contradict plaintiff's testimony regarding her upper extremity limitations. *See Vertigan v.*

8 – OPINION AND ORDER

*Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Therefore, the ALJ erred in the assessment of plaintiff's activities of daily living. However, because the ALJ otherwise properly discounted plaintiff's subjective symptom testimony based on inconsistencies with the medical record, the error here is harmless.

## ORDER

Based on the foregoing, the Commissioner's decision is AFFIRMED.

DATED September 20, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

9 – OPINION AND ORDER